## Doyle v. Brady, et al.

(Decided May 23, 1916.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

Wills—Devise to Witness—Proof.—Under section 4836 of the Kentucky Statutes a devise to one of two attesting witnesses to a will is not void if the will may be proven by the testimony of the other attesting witness.

RICHARD PRIEST DIETZMAN for appellant.

ROBERT T. BURKE, SHIELD, CAMPBELL & McATEE and JOHN L. WOODBURY for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Rev. Andrew J. Brady died a resident of Jefferson county, Kentucky, December 30, 1912, leaving a will to which John B. Gleeson and Katie Doyle were the attesting witnesses. This will was admitted to probate by the Jefferson county court on January 7, 1913, upon the testimony of said John B. Gleeson, one of the subscribing witnesses, who also proved the attestation of Katie Doyle, the other subscribing witness.

This suit was filed in the Jefferson circuit court by the executor to settle the estate and for a judgment declaring the effect of clause five of the will, which is as follows:

"I give to my faithful housekeeper, Katie Doyle, the sum of five thousand dollars."

Katie Doyle filed an answer alleging that at the time she attested said will she was not aware of any of its provisions; that she did not give any evidence and was not examined as a witness in any probate proceeding, nor was she in court at the time; that the will was proven only and admitted to probate solely by the evidence and testimony of the other witness to said will, John B. Gleeson, and she prayed that the devise to her be declared valid, and for a judgment for the amount thereof.

The demurrer to her answer was sustained and a judgment entered declaring the bequest to her void and of no effect, and that the $5,000.00 bequeathed to her should pass under the laws of descent and distribution to the heirs of said Andrew Brady.

The only question before us upon this appeal is the correctness of the judgment that by attesting the will Katie Doyle lost the devise to her. The question raised has never been passed upon by this court. In the cases of Floore vs. Green, 83 S. W. 133, and Skinner vs. Rasche, 165 Ky. 108, the point was mentioned but expressly waived.

Section 4836 of the Kentucky Statutes is as follows:

"If any person who attests the execution of a will shall, after its execution, become incompetent to be admitted a witness to prove the execution thereof, such will shall not, on that account, be invalid. And if a will is attested by a person to whom, or to whose wife or husband, any beneficial interest in any estate is thereby devised or bequeathed, if the will may not be otherwise proved, such person shall be deemed a competent witness; but such devise or bequest shall be void, except that if such witness would be entitled to any share of the estate of the testator in case the will was not established, so much of his share shall be saved to him as shall not exceed the value of what is so devised or bequeathed."

It is agreed by counsel representing the parties to this appeal that the decision of the point before us de-

pends largely on the meaning to be given the words in the above statute "if the will may not otherwise be proved," but it is contended by counsel for appellees that the proper construction is determined by Section 4828 of the Kentucky Statutes which reads thus:

"No will shall be valid unless it is in writing with the name of the testator subscribed thereto by himself, or by some other person in his presence and by his direction; and, moreover, if not wholly written by the testator, the subscription shall be made or the will acknowledged by him in the presence of at least two credible witnesses, who shall subscribe the will with their names in the presence of the testator."

Unquestionably the one must be construed in the light of the other as both are parts of one law; however, it is perfectly apparent that the latter section refers to the execution of the will, while the former refers to the proof of the execution or probate of the will.

Counsel for appellees concede that the will was properly executed, and that it is valid in all respects except as to the bequest to appellant. Having conceded this they seem to admit thereby that both of the attesting witnesses were "credible" or "competent" as provided by section 4828 of the statutes, at the time they attested the execution of the will, and it is further admitted that neither of these attesting witnesses has become incompetent since its execution to be admitted as a witness to prove the execution thereof, so that both of said witnesses are competent and credible as the words are used in these two statutes, and no question of any possible difference in the meaning of these words as used in these sections is raised as, in fact, there is no difference in their meaning as used. Having progressed thus far in accord, there appears to remain but the following portion of section 4836 about which there are any differences as to the proper construction:

"And if a will is attested by a person to whom or to whose wife or husband any beneficial interest in any estate is thereby devised or bequeathed, if the will may not be otherwise proved, such person shall be deemed a competent witness; but such devise or bequest shall be void."

It is further agreed by contending counsel that it is so well established as a rule of common law observed in this jurisdiction as to need no citation of authorities to

support it that a will may be admitted to probate upon the testimony of either one of the subscribing witnesses who also proves the attestation by the other. It, therefore, would seem quite easy to arrive at the conclusion that the portion of the statute above quoted, from the very language used, can only mean that Katie Doyle shall be a competent witness to prove the execution of this will "if it may not otherwise be proved" by the testimony of Gleeson, but in such event as it becoming necessary, because of the inability to procure the testimony of Gleeson, to prove it by the testimony of Katie Doyle, the devise or bequest to her shall be void.

The seeming simplicity of this construction, however, has not been sufficient to prevent this question from becoming involved in much doubt. In the States of Virginia and West Virginia the statutes upon the attestation and probation of wills are identical upon the question involved with ours, yet the Virginia Supreme Court of Appeals in the case of Bruce vs. Shuler, 108 Va. 670, have adopted a construction which holds that the mere attestation of a will by one of the two required attesting witnesses avoids the legacy therein to such witness, while the Supreme Court of West Virginia in the case of Davis vs. Davis, 43 W. Va. 300, held that the bequest to an attesting witness is void only if the testimony of such witness is required to establish the will.

These diametrically opposed conclusions result from the Virginia court holding that the competency of the witness in the statute related to the time of attestation, while the West Virginia court held that it related in one section to the time of the execution and in the other to the time of probation. This controversy as to whether the competency of the witness to a will referred to the time of the execution or proof of the will arose in England under a statute of frauds requiring a will of land to be attested by three credible witnesses and at a time when an interested party could not give testimony. Thereafter the English Parliament enacted 25 Geo. II., sec. 1 of chapter 6 of which is as follows:

"That if any person shall attest the execution of any will to whom or to whose wife or husband any beneficial devise, legacy, estate, interest, gift or appointment of or affecting any real or personal estate  *   *   *.  shall be thereby given or made, such devise, legacy, interest, gift or appointment shall, so far only as concerns such

person attesting the execution of such will or the wife or husband of such person or any person claiming under such person or wife or husband, be utterly null and void and such person so attesting shall be admitted as a witness to prove the execution of the will and codicil.''

It is quite apparent from reading this section, as the meaning of the language is unmistakable, that its enactment definitely settled the controversy in England by declaring that the act of attesting a will made void any devise to the witness. This was in harmony with the law then in effect that interest destroyed competency, and the witness's interest was destroyed that his competency might be preserved in order that the will might not be destroyed, then as always a concern of the legislative as well as the judicial branch of governments.

Had our law followed this English statute as was done by most of the States of the Union there could have been no doubt of our position. But not long after Kentucky became a State and when the harsh theory that interest destroyed all competency as a witness had become relaxed somewhat at least, our legislature in one of its early enactments passed the Wills Act of 1797, which did not follow the English law, and Chapter 9 of which is as follows:

''If any person shall subscribe his name as a witness to a will wherein any bequest is given to him, if the will may not be otherwise proved, the bequest shall be void and such witness shall be allowed and compellable to appear and give testimony on the residue of the will in like manner as if no bequest had been made. But if such witness would be entitled to any share of the testator's estate, in case the will were not established, so much of his said share shall be saved to him as shall not exceed the value of the legacy bequeathed to him.''

By comparison it will be observed that the Kentucky statute contained the provision not in the English act, that a subscribing witness to whom a bequest was given should be ''allowed and compellable'' to prove the will ''if it could not be otherwise proved,'' but if used for that purpose the bequest to him should be void. In view of the well known controversy that had arisen over this question in England and the manner of its settlement there by statute, does it not seem more reasonable to give our statute the plain meaning its language would suggest which is not consonant with the language of

the English statute rather than to attempt to construe it so as to harmonize with either side of the controversy, especially when to do so is to more effectively carry out the expressed desires of the testator in the disposition of his property, which always has been a chief concern of the legislatures and courts alike? Thus construing the law, and disregarding the controversy that had arisen under a different law, we are of the opinion that our early statute designedly consigned us to the position that has been adopted by the West Virginia courts.

Our Wills Act of 1797 was revised in 1852, but as was decided by this court in Fuller vs. Fuller, 83 Ky. 345, construing another section thereof, it was not modified or changed in any substantial way and that revision is the law that is now in force. It is universally agreed that one purpose in requiring that the execution of a will shall be attested by two witnesses was to avoid the possibility of fraud and perjury, and in our judgment this is attained as well under the West Virginia as the Virginia construction. From both it results that the interested as well as the disinterested witness is a credible or competent witness to attest and establish the will. The will is not invalidated as a whole because one of two subscribing witnesses is a beneficiary. The only difference is that under the one the bequest to the interested witness is invalidated by attestation, and in the other by testifying upon probation. Under either he is competent and compellable to testify in order to establish the will, and being compellable and competent to establish the will under either construction, the penalty of losing his bequest, it seems to us, ought to be enforced against him only when his testimony is required to establish the will, which accomplishes the purpose of the law to avoid chance for fraud or perjury upon his part, gives to the language of our statute its ordinary and reasonable meaning, and only thwarts the express desire of the testator in the event the testimony of the interested witness is needed in order to establish the will. We can see no good reason upon principle for avoiding the bequest except to escape the chance for fraud or perjury, and do not think we ought to do so unless such was the clear intention of the statute; and, not only do we believe that such was not the clear intention of our statute, but upon the other hand we are convinced that the statute was intended to mean what it

says when it says the bequest shall be avoided only if the will may not be otherwise proven. The other construction gives to the phrase "if the will may not be otherwise proved" no reasonable meaning whatever.

To attempt to base our construction upon the English controversy is only to invite confusion and is wholly unreasonable, as it loses sight of the fact that at the time that controversy arose an interested person could not testify for any purpose and could not establish any part of the will. Therefore he was not a "credible" or "competent' witness to establish the will, and if the competency in the statute related to the time of attestation he could not be counted as one of the three witnesses then necessary to the execution of a valid will, and the will was invalid as a whole. However, we cannot see the pertinency of that controversy, after the passage of a statute declaring a witness, theretofore under the common law incompetent because of interest, to be a competent witness to establish the will. Of course, where under the statute, 25 Geo. II., which made him competent to testify, and expressly forfeited his bequest by the act of attestation, there is no question but that the position of Lord Camden in the old English controversy is sustained, but because of the statute and not because of his construction of a different statute. So, most of our sister States having followed the English statute, the weight of authority is upon, as stated by some text writers and annotators, that side, but it is a weight of legislative, and not judicial, authority that can have no binding force in States having followed the Virginia law that removed the incompetency of interest by permitting an interested attesting witness to testify to establish the will, but upon condition that his bequest should be forfeited, not by attestation as under the English statute, but by testifying to establish the will when it could not be otherwise proved.

In only Virginia, West Virginia, New York, Texas and Kentucky, so far as we know, are the statutes, that removed the incompetency to testify that followed interest under the common law, unlike the English statute, and in each of these States the statutes are similar to ours, in which, as we read it, the incompetency is removed conditioned by loss of interest only when it becomes necessary to give evidence to establish the will.

In West Virginia in the case of Davis vs. Davis, *supra*, and New York in the cases of Caw vs. Robertson, 5 N. Y. 125, Cornwell vs. Woolley, 47 Barb. 326; In Re Johnson's Will, 75 N. Y. Supp. 489, and In Re Owen, 56 N. Y. Supp. 853, we find support for our position, while in Virginia in the case of Bruce vs. Shuler, *supra*, and Texas in the case of Fowler vs. Stagner, 55 Texas 393; that position is rejected; in Virginia upon the idea that the doubt as to when the ''competency'' related in the old English controversy has not been resolved by statute, which we consider fallacious, and in Texas upon the authority of the Virginia decision and note in 35 L. R. A. (N. S.) 686, reporting that case, in which the statutory differences are not pointed out.

In the instant case the will was ''otherwise proved'' than by the testimony of the witness, Katie Doyle, and her testimony was not needed or used to establish it.

We, therefore, conclude that the bequest to appellant was not rendered void by her subscribing the will as one of the two attesting witnesses.

Wherefore, the judgment is reversed with directions to overrule the demurrer to appellant's answer and for proceedings consistent with this opinion.